Dennis M. Moskal, Esq., CFE, CEDS
Manor Building
564 Forbes Avenue, Suite 1006
Pittsburgh, Pennsylvania 15219
Facsimile: (412) 927-1147
Direct: (412) 992-0948
dennis@harassment-doctor.com

Henry Miller, III, Esq.
BNY Mellon Center
500 Grant Street, Suite 2900
Pittsburgh, Pennsylvania 15219
Facsimile: (412) 573-6398
Direct: (412) 566-2565
millerhiii@aol.com
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEANDRA DIMATE CORTES, | CIVIL DIVISION |
| Plaintiff, | |
| v. | CASE NO.: 2:21-cv-539 |
| ALLEGHENY COUNTY, PENNSYLVANIA, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT OF RACE, COLOR, AND NATIONAL ORIGIN
DISCRIMINATION AND RETALIATION**

LEANDRA DIMATE CORTES, by and through her legal counsel, Dennis M. Moskal, Esq., and Henry Miller, III, Esq., files the following Complaint of Discrimination and Retaliation against Defendant, ALLEGHENY COUNTY, PENNSYLVANIA, and avers as follows:

**The Parties**

1. Plaintiff, LEANDRA DIMATE CORTES (hereinafter "Plaintiff"), is an adult individual, who resides in Pittsburgh, Allegheny County, Pennsylvania.

2. Defendant, ALLEGHENY COUNTY (hereinafter "Defendant-Employer"), is a Pennsylvania County of the Second Class which operates the Allegheny County Department of Economic Development.

3. At all times relevant hereto, Defendant-Employer acted or failed to act by and through their duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

4. As a Latin-American immigrant from Colombia, now citizen, who has spoken out against discrimination, Plaintiff is a member of multiple protected classes.

## Jurisdiction

5. This action is brought and jurisdiction lies pursuant to the Civil Rights Act of 1964, 423 U.S.C. §§2000e, et seq., as amended by the Civil Rights Act of 1991, and 28 U.S.C. §451, 1331, 1343, and 1345, and upon the doctrine of pendent and/or supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.[1]

6. Plaintiff has satisfied all the procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964:

   a. Plaintiff filed timely charges of race, color and national origin discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Relations Commission (PHRC) (dual filed) at Charge No. 533-2019-01805;

   b. Plaintiff received a Notice of Right to Sue from the EEOC regarding Charge No. 533-2019-01805 on January 25, 2021 and this action was commenced with this Court within 90 days of receipt of the Notices.

## Background Facts

7. On February 11, 2013, Plaintiff was hired as a Program Manager 2 for Defendant-Employer's Department of Economic Development. She was paid an annual salary of approximately $43,000.

8. Throughout her employment, Defendant-Employer paid Plaintiff less than white employees who were less qualified than her.

---

[1] The claims under the Pennsylvania Human Relations Act will be filed in the near future as part of an amendment to the instant Complaint.

9. While Plaintiff worked for Defendant-Employer, she was supervised by Defendant-Employer's previous Director of Economic Development, Bob Hurley; current Director of Economic Development, Lance Chimka; Senior Deputy Director of Economic Development, Jack Exler; Deputy Director of Economic Development, Pat Earley; and Assistant Director of Economic Development, Lauren Byrne. Byrne managed Plaintiff on a daily basis.

10. During her first two years working for the county, Plaintiff's immediate supervisor was Lance Chimka, Division Manager. Additionally, the Director at the time was Dennis Davin. During this time period, Plaintiff did not experience any problems overall nor did she submit any complaints of discrimination.

11. On or about September 7, 2018, Plaintiff filed Charge No. 533-2018-02219 with the EEOC alleging that Hurley, Earley, and Byrne discriminated against her because of her race, color, national origin and ethnicity. Specifically, she is a Latin American immigrant from Colombia.

12. Plaintiff has heard Byrne refer to her in a condescending tone of voice to Robert Frank as "The Colombian."

13. Hurley would regularly make negative comments about Plaintiff's accent.

14. Plaintiff's charge outlined the extreme pattern of antagonism that Defendant-Employer's management had shown towards her since at least 2016 when Byrne became her manager.

15. Plaintiff had previously complained about Byrne's discriminatory treatment of her, and Byrne retaliated against her for doing so. After Plaintiff filed her charge with the EEOC, Byrne's retaliation escalated. She excluded Plaintiff from meetings and training opportunities, berated her in front of staff, isolated her from her coworkers, and tried to intimidate her.

16. As a result of the hostile work environment created by Byrne in retaliation for her EEOC charge, Plaintiff was forced to complain to Human Resources about specific instances of Byrne's retaliation on January 31, 2019, February 6, 2019, February 19, 2019, and February 26, 2019.

17. On February 26, 2019, Plaintiff complained to Lindy Krajnak, the Human Resources Manager for Defendant-Employer's Department of Economic Development, that Byrne was discriminating against her because of her accent and nationality.

### Byrne Responds to Complaints by Putting Plaintiff on a PIP

18. On March 8, 2019, Defendant-Employer responded to Plaintiff's complaints about her by putting Plaintiff on a Performance Improvement Plan (PIP) for alleged poor work performance and "unprofessional behavior in the workplace including subjective allegations of disruptive and disrespectful behavior and actions towards the manager and other co-workers. In fact, the alleged "unprofessional," "disruptive," and "disrespectful" behaviors that Byrne alludes to in Plaintiff's PIP are actually, to the contrary, numerous complaints of discrimination and retaliation.

19. During the March 8, 2019 meeting in which Plaintiff was placed on a PIP, she asked Defendant-Employer's Employee Relations Coordinator, Jeremy Beaver, about the status of the investigation regarding her complaint to HR on February 26, 2019. Beaver informed her that he had 'completed' the investigation and that she would receive a response by March 11, 2019; however, Plaintiff never did receive a response.

20. The PIP required bi-weekly review meetings. On March 25, 2019, Plaintiff asked for the specific allegations of unprofessional conduct alleged in her PIP, and Jack Exler, Senior Deputy Director of Economic Development, sent her home and suspended her for allegedly being insubordinate or unprofessional.

21. On April 8, 2019, Exler again dismissed for the day without pay because she asked more questions during a bi-weekly meeting. Exler then chased Plaintiff down the hallway and told her to "leave, leave, leave."

22. Two days later, on April 10, 2019, Beaver questioned Plaintiff about her complaints of discrimination and retaliation and told her that he needed additional information for his investigation, even though he previously told her that his investigation was completed over a month before.

23. On April 10, 2019, Plaintiff wrote Beaver a letter stating that she did not understand why he was suddenly asking her for information about the investigation into her discrimination complaint against Byrne since Beaver himself informed her that the investigation was over. Plaintiff further requested that Beaver send her the questions by

4

email in order to reply since she has other deadlines and work to complete, and it was easier to reply by email. Beaver never sent her a follow-up email.

24. In the letter to Beaver, Plaintiff again complained about Byrne's discriminatory treatment of her. She also expressed how she had informed Nichole Nagle and other Human Resource representatives of her problems with Lauren Byrne, but her reports were to no avail.

### The Fix is in – Plaintiff is Axed

25. The next day, on April 11, 2019, Defendant-Employer suspended Plaintiff indefinitely without pay. Additionally, on the very same day, Krajnak provided written notice to Plaintiff by email at 10:35 a.m. of a Loudermill Hearing that would take place at 11:15 a.m., a mere forty minutes later.

26. Ultimately, Defendant-Employer fired her on April 22, 2019. This termination was approximately two months after Plaintiff's February 26, 2019 complaint about her supervisor and less than two weeks after her letter to Beaver.

### COUNT I – RETALIATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e-3(a)

27. Plaintiff incorporates paragraphs 1 through 26 herein as if fully set forth.

28. Defendant-Employer retaliated and/or discriminated against Plaintiff in the terms, conditions and privileges of her employment because of Plaintiff's opposition to discrimination, for reporting it, and for her participation in and filing an EEOC Complaint at Charge No. 533-2019-01805 and/or for otherwise speaking out on numerous occasions about Byrne's discriminatory treatment on the basis of her race, color, ethnicity and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).

29. Plaintiff was subject to adverse employment action, including but not limited to a hostile and retaliatory work environment, ostracism, shunning, intimidation, exclusion from opportunities available to white employees, a sham and poorly handled investigation, improperly being placed on a performance improvement plan, dismissing her from work on March 25, 2019 and April 8, 2019, and an unwarranted termination in re-

sponse and/or retaliation for her filing an EEOC charge and/or reporting and/or speaking out against discrimination.

30. Defendant-Employer's violation of Title VII was undertaken with malice or reckless indifference to her federally protected right to not be discriminated and/or retaliated against because of her race, color, ethnicity and national origin and/or protected activity.

31. As a direct and proximate result of Defendant-Employer's unlawful, discriminatory and retaliatory treatment of Plaintiff during her employment and at the time of her termination, Plaintiff has suffered pecuniary losses including in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits.

32. As a direct and proximate result of Defendant-Employer's unlawful, discriminatory and retaliatory treatment of Plaintiff during her employment and at the time of her termination, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish, embarrassment, loss of enjoyment of life, trouble sleeping and other non-pecuniary losses.

### COUNT II – RACE, COLOR, ETHNICITY AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e

33. Plaintiff incorporates paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff, who is a Latin American woman born in Colombia is a member of a protected class.

35. Defendant-Employer discriminated against Plaintiff in the terms, conditions and privileges of her employment because of her race, color, ethnicity and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

36. Plaintiff was subject to adverse employment action including a hostile and retaliatory work environment, ostracism, shunning, intimidation, exclusion from opportunities available to white employees, a sham and poorly handled investigation, being placed on a performance improvement plan, dismissing her from work on March 25, 2019 and April 8, 2019, and an unwarranted termination.

37. Defendant-Employer's violation of the Civil Rights Act was undertaken with malice or reckless indifference to her federally protected right to not be discriminated against because of her race, color, ethnicity and/or nationality.

38. As a direct and proximate result of Defendant-Employer's unlawful, discriminatory and retaliatory treatment of Plaintiff during her employment and at the time of her termination, she has suffered pecuniary losses including in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits.

39. As a direct and proximate result of Defendant-Employer's unlawful, discriminatory and retaliatory treatment of Plaintiff during her employment and at the time of her termination, she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, trouble sleeping and other non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands as follows:

a. That the Court find that Defendant-Employer's actions are unlawful and in violation of the Civil Rights Act;

b. That Defendant-Employer is required to compensate Plaintiff for any wages, commissions, vacation pay and benefits owed, but not paid, at the time of termination;

c. That Defendant-Employer be ordered to reinstate Plaintiff contingent that it can be done so she has no contact with the discriminating individuals with a retroactive increase in pay effective from the date she was terminated with all benefits incident thereto, including but not limited to wages, benefits, training and seniority;

d. That Defendant-Employer be required to compensate Plaintiff for the full value of lost wages, both regular and overtime, salary, commissions, bonuses, vacation pay and benefits she would have received from Defendant-Employer had it not been for Defendant-Employer's unlawful actions, including any wages she would have received if not for her employer discriminating and/or retaliating against her;

e. That Defendant-Employer be required to reimburse Plaintiff for lost pension, social security, experience, training opportunities and other lost benefits from her termination date with Defendant-Employer up to the point of any new employment and all lost benefits continuing thereafter that any new employer does not provide as part of its compensation and benefits package;

f. That Defendant-Employer be required to compensate Plaintiff for any front pay, including any future lost wages, commissions, and benefits, such as any pay differential for a certain reasonable period going forward due to any difference in wages and benefits between her past employment with Defendant-Employer and any future employer;

g. That Defendant-Employer be required to reimburse Plaintiff for all expenses she incurred due to Defendant-Employer's discriminatory treatment and unlawful termination of Plaintiff;

h. That Defendant-Employer should pay Plaintiff compensation for the extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses that resulted from its improper discriminatory actions;

i. That Plaintiff be awarded exemplary and/or punitive damages due to Defendant-Employer's clear discriminatory animus;

j. That Plaintiff be awarded against Defendant-Employer the costs and expenses of this Court action and any further action, including all reasonable attorneys fee as provided by statutes;

k. That a final judgment in favor of Plaintiff and against Defendant-Employer be entered for liquidated damages;

l. That Defendant-Employer be enjoined from discriminating against Plaintiff in any manner that violates her civil rights;

m. That Plaintiff is granted such further legal and equitable relief as the Court may deem just and proper; and

n. That Defendant-Employer is required to reimburse Plaintiff for any lost pension, social security, experience, training opportunities and other lost benefits from its discriminatory treatment and/or its unlawful termination.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

/s/Dennis M. Moskal
Dennis M. Moskal, Esq., CFE, CEDS
PA I.D. # 80106
*Attorney for Plaintiffs*

Law Offices of Dennis M. Moskal, LLC
Manor Building
564 Forbes Avenue, Suite 1006
Pittsburgh, PA 15219
Facsimile (412) 927-1147
Direct (412) 992-0948
dennis@harassment-doctor.com

Henry Miller, III, Esq.
BNY Mellon Center
500 Grant Street, Suite 2900
Pittsburgh, Pennsylvania 15219
Facsimile: (412) 573-6398
Direct: (412) 566-2565
millerhiii@aol.com